UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 2:10-CR-124-PPS |
| | ) | |
| GENARO FLORES, | ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION AND ORDER**

This matter is before me on Genaro Flores's pro se motion for a reduction of sentence or compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [DE 95]. Flores is a 48-year-old male incarcerated at Moshannon Valley Correctional Facility in Pennsylvania, who is scheduled to be released in April 2021. *Id.* Flores claims his underlying health conditions of asthma, lung problems, hypertension, and psychiatric issues place him at high risk of severe illness or death if he contracts COVID-19. [DE 95.] For the following reasons, the motion for compassionate release is denied.

### Background

I'll begin with a brief sketch of the procedural background and facts of the case. In 2010, Flores, a citizen of Mexico and unlawfully in the United States, was charged in a two-count indictment for his role in a drug deal involving over 1400 pounds of marijuana. [DE 1.] Briefly, here's what happened: Federal agents seized the 1400 pounds of marijuana at the border and somehow knew it was bound for Flores in northwest Indiana. Undercover agents contacted Flores to set up a reverse sting. During

the transaction, Flores brought $300,000 in exchange for the drugs and, not surprisingly, he was armed during the transaction. Flores revealed his firearm to the agents and pointed out additional vehicles in the area "in case there was trouble." After the drugs and money were swapped, Agents arrested Flores's accomplices and seized the contraband. Somehow, Flores got away, fled to Mexico and was not apprehended until 2018. Flores stated at sentencing that he had returned to the United States sometime in 2013 and had been living in Hammond.

On March 21, 2018, Flores pleaded guilty to Count I, conspiracy to possess with intent to distribute 100 kilograms or more of marijuana. [DE 75.]  Flores's final offense level was 27 and he had a criminal history category of I, with a guideline range of 70 to 87 months. [DE 83.]  On July 31, 2018, I sentenced Flores to 46 months imprisonment, followed by two years of supervised release. [DE 90.]  Flores is currently serving his sentence at Moshannon Valley Correctional Facility with a projected release date of April 16, 2021.  [DE 95.]

In support of his motion, Flores argues the COVID-19 pandemic is an extraordinary and compelling reason to consider a reduction in his sentence, that prison conditions do not allow for preventing the transmission of the disease, incarcerated individuals are at special risk of infection given their living situations, the largest outbreaks are tied to prisons and that "the unprecedented threat of the novel coronavirus (COVID-19), combined with my medical conditions, Asthma, lung problems and Psychiatry issues place me at high risk of severe illness and/or death if I contracts COVID-19." [DE 95 at 9.]  In addition, he identifies hypertension and chronic

back pain in his motion. *Id.* Flores also highlighted the CDC's guidance, which recognized that the cumulative effects of asthma puts him at high risk. *Id.* Additionally, he provided his medical records which support that he suffers from asthma, lung problems, hypertension, depression, and chronic back pain. [DE 95-1.]

## Discussion

The instant request is for compassionate release under the First Step Act. Flores bears the burden of showing that he is entitled to compassionate release. *See United States v. Greenhut*, No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31. 2020). Compassionate release is "an extraordinary and rare event." *United States v. Mangarella*, 3:06-cr-151-FDW-DCK-3, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020).

Before addressing the merits, I must first look at the exhaustion requirement. The First Step Act provides that I can consider a motion directly from the defendant after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Flores believes he has exhausted his administrative rights, but he did not file an appeal or a final administrative denial from either the Bureau of Prisons General Counsel or the Director of the Bureau of Prisons. [DE 95 at 3.] The government confirms that Flores has not made an administrative request or been independently evaluated for home confinement. [DE 97 at 7.] Therefore, Flores has not satisfied the administrative exhaustion requirement. But even if he had, I would still deny Flores's request on the merits, as explained below.

The First Step Act provides that the Court may reduce the term of imprisonment after considering the factors set forth in section 3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction" and that such a reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In other words, the compassionate release statute directs me to make three considerations: (1) whether a reduction is consistent with the factors listed in section 3553(a); (2) whether extraordinary and compelling reasons warrant a sentence reduction; and (3) whether a reduction would be consistent with the Sentencing Commission's policy statements. All three considerations weigh against release in this case.

The section 3553(a) factors, which are well-known by this point, include the nature and circumstances of the offense and history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and the kinds of sentences and sentencing range for the applicable category of offense committed.  18 U.S.C. § 3553(a).  The government argues that the section 3553(a) factors weigh against reduction in sentence in Flores's case, and I agree.

Flores pleaded guilty to conspiracy to distribute 100 kilograms or more of marijuana and I sentenced him to 46 months in prison, which was well below the Guideline sentence of 70 to 87 months.  The serious and dangerous nature of Flores's offense does not weigh in favor of his early release, including the quantity of the marijuana being delivered and the role that Flores played in this scheme. Flores was

armed during the deal; he made a veiled threat to the undercover agent while referencing the gun; he was unlawfully in the country; he fled when he knew the jig was up; he unlawfully reentered the country and remained at large for nearly a decade. Under Section 3553(a), all of these are facts that strongly favor denying compassionate release. Flores states he has no disciplinary actions in prison but does not support that with documentation in the record. In any event, due to the serious nature of his offense, it is possible that Flores could still pose a danger to the public.

In sum, the Section 3553(a) factors of punishment, deterrence, protecting the public and respect for the law do not warrant release in this case. *See, e.g., United States v. Marquis Medellin*, 2020 WL 4048139, 2:15-cr-72-PPS (N.D. Ind. July 20, 2020) (denying request for compassionate release based in part on the severity of the offense); *United States v. Morales*, No. 3:19-CR-00121 (KAD), 2020 WL 2097630, at *4 (D. Conn. May 1, 2020) (denying motion for compassionate release where underlying offense was dangerous, finding "[n]or does the sentence of 'time served' achieve the goals of sentencing or otherwise find the proper balance of the Section 3553 sentencing factors.").

In turning to whether there are "extraordinary and compelling reasons [that] warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" 18 U.S.C. § 3582(c)(1)(A), I note that the pertinent policy statement is set forth in the United States Sentencing Guidelines (USSG) § 1B1.13. This would allow me to reduce Flores's sentence if I determined extraordinary and compelling reasons warrant the reduction, Flores is not a

danger to the safety of any person or the community, and the reduction is consistent with the policy statement. USSG § 1B1.13. The Sentencing Commission also provided specific examples of what constitutes an extraordinary and compelling circumstance, which include, *inter alia*: the defendant is suffering from a terminal illness; the defendant is suffering from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility; or other reasons as determined by the Director of the BOP. USSG § 1B1.13 cmt. n. 1.

Here, Flores's health issues by themselves do not constitute extraordinary or compelling reasons to reduce his sentence. Flores's motion specifically mentions asthma, lung problems, hypertension, and psychiatric issues and supports this with his medical records. [DE 95-3.] The government asserts that his medical conditions are well-controlled and do not constitute an extraordinary and compelling factor outweighing the 3553(a) factors. [DE 97.] The Moshannon Valley Correctional Facility determined that Flores's medical problems are under control through prescribed medications and by following the physician's treatment plan. [DE 95-1.] "His needs are being met and there are no current concerns for any deteriorating mental or physical health that would substantially diminish his ability to function in a correctional facility." *Id.* I find Flores's maladies are common and treatable, and I have nothing before me that shows his health conditions affect his ability to provide self-care in the institution and therefore would not, by themselves, justify release. *See, e.g., United States*

*v. Carpenter*, No. 2:14-cr-309-GEB, 2019 WL 7631396, at *2 (E.D. Cal. Dec. 23, 2019) (denying compassionate release where the records "evince that [the prisoner's] medical conditions are not life-threatening and should not limit her self-care ability."); *United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D. N.M. 2019) (quotation omitted) ("In exercising discretion under § 3553(a) and the First Step Act, most courts treat compassionate release due to medical conditions as . . . a rare event."); *United States v. Dusenbery*, No. 5:91-cr-291, 2019 WL 6111418, at *2 (N.D. Ohio Nov. 18, 2019) (denying compassionate release to defendant suffering from multiple conditions, including potential kidney failure, because they did not "impair his ability to provide self-care within the correctional facility.").

    The real question is whether Flores's health, along with the enhanced risk of contracting COVID-19 at Moshannon Valley Correctional Facility, justifies release. Even considering Flores's asthma, lung problems, hypertension, and psychiatric issues during the COVID-19 pandemic, it still does not meet the extraordinary and compelling standard in this case. While the CDC guidance provides that people with moderate to severe asthma may be at higher risk of getting very sick from COVID-19, it lists a number of precautionary steps to reduce the risk such as having a month supply of medication on hand, washing hands, avoiding close contact, wearing masks, and avoiding travel.[1]

---

[1] *People with Moderate to Severe Asthma*, CDC, www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last updated Nov. 20, 2020).

According to the government, at the time of its response, there were no current cases of inmates with COVID-19 and that three employees who contracted COVID-19 had recovered. [DE 97 at 8.] It's true that some of the facts have changed since the government filed its response brief. Indeed, as of December 10, 2020, the number of active coronavirus cases at Moshannon Valley Correctional Facility now include 28 inmates and no employees. *See* www.bop.gov/coronavirus/ (last visited Dec. 14, 2020). But the officials at the institution are making efforts to curb the problem. Consistent with the CDC guidance, as noted by the government, the Bureau of Prisons has modified its operations to minimize the risk of COVID-19 transmissions by instituting an Action Plan for all prisons, which includes providing weekly testing, allow for limited gatherings, all staff and inmates are required to wear masks, asymptomatic individuals are quarantined and symptomatic individuals are placed in isolation until either they test negative or are released by medical personnel, social visitation has ceased, and attorneys must be screened before visiting an inmate. [DE 97.]; *see COVID-19 Status*, BOP, www.bop.gov/coronavirus/covid19_status.jsp (last visited Dec. 14, 2020). While I am certainly sympathetic with Flores's situation and his concern about potentially becoming infected with COVID-19 from someone else at the facility, I do not think this is an extraordinary and compelling reason to justify release. S*ee United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020) ("the mere presence of COVID-19 in a particular prison (or the BOP generally) cannot justify compassionate release - if it could, every inmate in that prison could obtain release.");

*United States v. Collins*, No. 14-cr-30038, 2020 WL 2301217, at *2 (C.D. Ill. May 8, 2020) (denying motion for compassionate release, recognizing "the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that makes him more susceptible to the disease.").

## Conclusion

Despite the severity of the COVID-19 pandemic, Genaro Flores's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [DE 95] is DENIED. Flores has not shown the factors under section 3553(a) warrant release or that extraordinary and compelling reasons warrant such a reduction under § 3582(c)(1)(A). SO ORDERED.

ENTERED: December 14, 2020.

      /s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT